UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHARLES K.,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

Civil Action 2:21-cv-5111
Judge James L. Graham
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Plaintiff, Charles K. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Supplemental Security Income benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 7), the Commissioner's Memorandum in Opposition (ECF No. 8), Plaintiff's Reply Memorandum (ECF No. 9), and the administrative record (ECF No. 6). For the reasons that follow, the undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

### I.    BACKGROUND

Plaintiff filed an application for Title XVI Supplemental Security Income Benefits on August 29, 2019, alleging that he had been disabled since August 1, 2019. (R. 246–51.) On December 8, 2020, following administrative denials of Plaintiff's application initially and on

reconsideration, Administrative Law Judge Susan Smoot (the "ALJ") held a hearing, at which Plaintiff, represented by counsel, appeared and testified. (R. 100–31.) A vocational expert ("VE") also appeared and testified at the hearing. (*Id.*) On February 3, 2021, the ALJ issued a decision denying benefits. (R. 83–94.) On August 25, 2021, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. 1–4.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

Plaintiff sets forth two contentions of error: (1) the ALJ erred in evaluating the opinion of his treating nurse practitioner; and (2) the ALJ lacked authority to issue a decision because the statute governing removal of the Commissioner of Social Security is unconstitutional. (Pl.'s Statement of Errors 7–16, ECF No. 7.)

## II.    RELEVANT RECORD EVIDENCE

Plaintiff's evidence-related contention of error focuses on alleged defects in the ALJ's consideration of Kyle Carpenter, APRN, CNP's opinions. Plaintiff treated with Mr. Carpenter for the period of April 2019 through December 2020. Plaintiff's chief complaint was pain in his back and knees and Mr. Carpenter diagnosed Plaintiff with primary osteoarthritis of both knees, chronic low bilateral back pain without sciatica, and thoracic degenerative disc disease ("DDD"). (R. 389.) Mr. Carpenter's treatment notes reflect numerous physical exams in which Plaintiff was found to exhibit tenderness or decreased range of motion in his thoracic or lumbar spine, as well as decreased range of motion in both knees. (R. 438, 615, 618, 622, 631, 705, 708, 713–14, 761.) Plaintiff reported taking Percocet, which lessened his pain, and Mr. Carpenter noted, "his ADLs [activities of daily living] are not limited with the medication." (R. 400, 436.)

Mr. Carpenter also reviewed a July 2016 x-ray of Plaintiff's thoracic spine, which showed moderate DDD and endplate changes in the lower thoracic spine; some anterior wedging of several levels, likely chronic; and associate kyphosis (R. 433), and a March 2017 bilateral

2

knee x-ray showing significant medial joint space narrowing in both knees, with the right greater than left, right knee moderate to severe, left knee moderate osteoarthritic change (R. 432–33). Mr. Carpenter also obtained updated x-rays. In July 2019, Plaintiff's thoracic spine x-ray showed no acute osseous abnormality, but moderate DDD and chronic wedging (R. 651) and Plaintiff's lumbar spine x-ray showed no acute osseous abnormality, but showed moderate DDD with mild disc space narrowing at L1 and moderate height loss and anterior wedging of T10-12. (R. 648.) In December 2019, Plaintiff's bilateral knee x-ray showed no acute abnormality involving the right or left knees and no radiographic manifestations of any significant arthritides. (R. 654.)

Mr. Carpenter issued a Primary Care Medical Statement on December 4, 2020, diagnosing Plaintiff with chronic low back pain, lumbar and thoracic, DDD, hypertension, and chronic knee pain. (R. 1013.) Mr. Carpenter listed Plaintiff's symptoms as "daily, constant pain in the lower back and knees that significantly restricts his mobility." (*Id.*) When asked to identify the clinical findings and objective signs that support the severity of Plaintiff's symptoms and Mr. Carpenter's opinions, Mr. Carpenter answered. "Tenderness low back and knees, decreased range of motion back and knees, abnormal thoracic and lumbar x-rays." (*Id.*) Mr. Carpenter opined that Plaintiff was limited to two hours each of sitting and standing/walking in an 8-hour working day, that Plaintiff would need unscheduled 10–15 minute breaks every hour, and that Plaintiff would be absent from work more than four days per month. (*Id.* at 1013–14.)

## III.    THE ALJ'S DECISION

The ALJ issued her decision on February 3, 2021, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 83–94.) The ALJ began by noting that, "[a]lthough supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), the undersigned has considered the complete medical history consistent with 20 CFR 416.912." (R. 83.) At step one of the sequential

3

evaluation process,[1] the ALJ found that Plaintiff did not engage in substantial gainful activity since his alleged onset date of August 1, 2019. (R. 85.) At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine; degenerative disc disease of the thoracic spine; hypertension; morbid obesity; osteoarthritis of the bilateral knees, reversible obstructive lung defects/small airway disease; borderline intellectual functioning, antisocial and borderline personality traits with conduct disorder. (*Id.* at 85.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix. (*Id.* at 86–88.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?

    2. Does the claimant suffer from one or more severe impairments?

    3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The ALJ then set forth Plaintiff's physical residual functional capacity ("RFC") [2] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: The claimant can occasionally lift and/or carry, including upward pulling, up to 20 pounds and can frequently lift and/or carry, including upward pulling, up to 10 pounds. He can stand and/or walk (with normal breaks) for a total of about 4 hours in an 8-hour workday and can sit for total of about 6 hours in an 8-hour workday. He can occasionally climb ramps and stairs and never climb ladders, ropes and scaffolds. He can frequently stoop, kneel crouch and crawl. He should avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation. He can frequently reach OH with the left upper extremity. He should avoid exposure to dangerous moving machinery and unprotected heights and should perform no commercial driving.

(R. 88.) In arriving at this RFC, the ALJ summarized the following record evidence related to Plaintiff's back and knee pain:

> The claimant alleged, in reports, disability due to arthritis in the back, degenerative disc disease, bursitis, bronchitis, and sleep apnea (Exhibit B2A). He reports severe and chronic pain in his back, knees, shoulders, and he had chronic bronchitis. He reported having difficulties doing activities of daily living due to pain and he cannot breathe in the heat. Additional limitations included difficulty with lifting, squatting, standing, walking, kneeling, stair climbing, and using his hands. He reported that he can walk for about 15 minutes for having to rest in a seated position for 10 minutes. There were no difficulties reported with paying attention or following written instructions noted. In addition, he reported that he performs household chores and works on cars, though doing these activities all day takes a beating on him. He also cares for his dog. He has a girlfriend who helps him with dog care and chores. He is able to prepare meals every day ranging from sandwiches to meals with several courses. When he performs housework or yard work he has to takes breaks. He walks, rides in a car and/or takes public transportation when he goes out every day. He shops in stores once per month for a couple of hours. He is able to pay bills and count change. He enjoys watching TV and playing with his game system. (Exhibit B1E).
>
> * * *

---

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ also assessed mental limitations, but those are not relevant to Plaintiff's Statement of Errors.

> The claimant, in April 2020, presented for follow-up of low back and knee pain. He was noted to be currently taking Percocet and relayed that the medication was working well for him. In July 2019, the claimant stated that his activities of daily living were not impacted when he used this medication. However, he had noticed some worsening knee instability he noticed occurred when walking or standing. He had not fallen and there was no numbness or weakness. He was diagnosed as having moderate degenerative disc disease of the lumbar spine and primary osteoarthritis of the bilateral knees, but an MRI of the lumbar spine was denied by insurance. An x-ray of the lumbar and thoracic spines showed no acute osseous abnormality of the lumbar spine, mild disc space narrowing at L1, moderate degenerative disc disease in the lower lumbar spine, moderate height loss and anterior wedging of T10-T12, which was unchanged from a prior x-ray in May 2019. X-rays of the bilateral knees showed no acute abnormality involving the right or left knees and no radiographic manifestations of any significant arthritis. Physical therapy was noted to be completed without benefit. On physical examination, there was pain and spasms in both the thoracic and lumbar spine. He exhibited normal range of motion and no tenderness to either the lumbar or the thoracic spine (Exhibits B8F, 5, 22, 45; B11F, 4-5).

(R. 89–90.) Notably, the only treatment records discussed by the ALJ pertaining to Plaintiff's back or knee pain are (a subset of) those of Mr. Carpenter. (*See id.*, citing Exhibits B8F, B11F, at R. 610–62, 704–19; *but see also* additional treatment records by Mr. Carpenter at Exhibits, B5F, B15F, at R. 432–58, 759–65.)

At step four, relying on testimony from the VE, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 92.) At step five, the ALJ determined that in light of Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform, such as merchandise marker, mail sorter, and dispatcher. (*Id.* at 93.) The ALJ therefore concluded that Plaintiff was not under a disability at any time from August 1, 2019, the alleged onset date, through the date of the decision. (*Id.* at 94.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

6

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V.  ANALYSIS

Plaintiff raises two issues in his Statement of Errors (ECF No. 7): (1) the ALJ erred in evaluating the opinion of Mr. Carpenter, his treating nurse practitioner; and (2) the ALJ lacked authority to issue a decision because the statute governing removal of the Commissioner of Social Security is unconstitutional. The undersigned finds that remand is required as to Plaintiff's

7

first contention of error because the ALJ's evaluation of Mr. Carpenter's opinions is not supported by substantial evidence.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in a his or her case file. *Id*. The governing regulations[3] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)–(5). When evaluating medical opinions, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must]

---

[3] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017).

8

articulate how [he or she] considered the other most persuasive factors . . . ." §§ 404.1520c(b)(3); 416.920c(b)(3).

Here, Plaintiff contends that the ALJ failed to provide the required articulation of her supportability and consistency analysis when considering Mr. Carpenter's opinions. The ALJ provided the following discussion of Carpenter's opinions, finding them unpersuasive:

> Kyle Carpenter, APRN, CNP completed a medical source statement on behalf of the claimant in December 2020. He stated the claimant suffered from anxiety and depression. He can sit/stand/walk for about 2 hours in an 8-hour workday. He would require unscheduled breaks every hour for 10-15 minutes. He had "good" days and "bad" days. The claimant would be absent 4 or more times a month, unscheduled (Exhibit B20F). The undersigned does not find the opinion entirely persuasive, despite the fact that this was an acceptable medical source. While the evidence supports the claimant does have physical and mental limitations due to his combination of impairments, the limitations were not completely consistent with the claimant's treatment notations and object medical evidence as discussed above. Nor are they consistent with the claimant's self-reported daily activities which include working on cars, performing household chores and yard work with breaks, caring for his dog with his girlfriend, preparing several course meals, walking and taking public transportation, shopping in stores, paying bills, watching TV and playing with his game system. (Exhibit B1E).

(R. 92.)

The undersigned agrees that the ALJ's supportability and consistency articulations are lacking. As to supportability, ALJs must consider "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1). In this regard, the ALJ stated only that "the limitations were not completely consistent with the claimant's treatment notations . . . as discussed above." (*Id.*) To the extent this statement can be construed as an articulation of the ALJ's supportability analysis, the ALJ appears to reject Mr. Carpenter's opinions because they are unsupported by Mr. Carpenter's treatment notes.

To support his opinions, Mr. Carpenter specifically relied on his objective findings that Plaintiff demonstrated tenderness and decreased range of motion in his back and knees and

9

Plaintiff's abnormal thoracic and lumbar spine x-rays. (R. 1013.) Mr. Carpenter's treatment notes bear out that on physical examination, Plaintiff frequently exhibited tenderness or decreased range of motion in his thoracic or lumbar spine, as well as decreased range of motion in both knees. (R. 438, 615, 618, 622, 631, 705, 708, 713–14, 761.) Moreover, Mr. Carpenter's treatment notes discuss thoracic and lumbar spine x-rays that consistently document DDD and wedging. (R. 433, 648, 651.)

The ALJ does not explain the purported inconsistencies between Mr. Carpenter's opinions and his treatment notes that led her to conclude his opinions were unsupported. Moreover, the "treatment notations . . . discussed above" are only a portion of Mr. Carpenter's treatment notes in the record. Even more troubling is the ALJ's characterization of Mr. Carpenter's treatment notes as indicating that Plaintiff "exhibited normal range of motion and no tenderness to either the lumbar or the thoracic spine," which is clearly inaccurate. (*See* R. 438, 615, 618, 622, 631, 705, 708, 713–14, 761, documenting tenderness or decreased range of motion in the lumbar or thoracic spine on nine separate examinations.) Because the ALJ's supportability conclusion is unexplained, and is perhaps based on a misapprehension of the record, the ALJ failed to satisfy her supportability articulation obligations under 20 C.F.R. § 416.920c(b)(2).

As to consistency, the ALJ must consider the "consisten[cy of] a medical opinion(s) . . . with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(2). The ALJ first stated that "the limitations were not completely consistent with the . . . object[ive] medical evidence as discussed above." (R. 92.) However, as previously noted, the only back- and knee-related objective evidence discussed by the ALJ was a subset of Mr. Carpenter's own treatment notes. And, as previously noted, the ALJ failed to explain how Mr.

Carpenter's opinions were inconsistent with his treatment notes. Next, the ALJ states, "[n]or are [Carpenter's opinions] consistent with the claimant's self-reported daily activities which include working on cars, performing household chores and yard work with breaks, caring for his dog with his girlfriend, preparing several course meals, walking and taking public transportation, shopping in stores, paying bills, watching TV and playing with his game system." (R. 92.) But it is not apparent to the undersigned how these daily activities, which permit Plaintiff to take breaks and change position at will, are inconsistent with Mr. Carpenter's opined limitations on sitting and standing/walking. The ALJ again does not explain. Thus, the ALJ's cursory treatment of consistency is insufficient to satisfy her articulation obligations under 20 C.F.R. § 416.920c(b)(2).

Additionally, an ALJ's mischaracterization of the record typically requires remand. *See, e.g.*, *Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes."); *Dalton v. Comm'r of Soc. Sec.*, No. 2:20-CV-3636, 2021 WL 2430939, at *11 (S.D. Ohio June 15, 2021), *report and recommendation adopted*, 2021 WL 2853442 (S.D. Ohio July 8, 2021) (remanding due to factual inaccuracies in ALJ's characterization of treating source's notes). Given the ALJ's mischaracterization of Mr. Carpenter's physical examinations and unexplained conclusions as to supportability and consistency, the undersigned cannot trace the ALJ's path of reasoning or discern what evidence the ALJ relied upon to reject the opinions of Mr. Carpenter relating to Plaintiff's ability to sit and stand/walk. Remand is therefore required. *See Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (finding that "the ALJ's decision still must say

11

enough 'to allow the appellate court to trace the path of his reasoning.'") (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

The Commissioner's counterarguments are unavailing. First, the Commissioner contends that Plaintiff's reports of decreased pain with Percocet justifies the ALJ's discounting of Mr. Carpenter's opinions. However, Mr. Carpenter still documented tenderness and decreased range of motion in Plaintiff's thoracic and lumbar back with Percocet use. Because the ALJ failed to appreciate the tenderness and decreased range of motion recorded in Mr. Carpenter's treatment notes, the undersigned is still unable to trace the path of her reasoning. Next, the Commissioner argues that the ALJ properly discounted Mr. Carpenter's opinions as to absences and breaks because those issues are reserved to the Commissioner. But the Sixth Circuit has expressly rejected this argument. *See Sharp v. Barnhart*, 152 F. App'x 503, 509 (6th Cir. 2005) ("Nor are we aware of any regulatory or case support for the third explanation given by the ALJ—that 'the issue of disability based upon frequent absenteeism . . . remains an issue reserved to the Commissioner.'"). Further, the ALJ did not reject Mr. Carpenter's opined limitations on the basis that absences and breaks are issued reserved to the Commissioner.

Finally, the Commissioner contends that any error by the ALJ in rejecting Mr. Carpenter's opinions as to sitting, standing, and walking is harmless, because the VE testified to various sedentary jobs someone with the RFC assessed by the ALJ is able to perform (in addition to the light level of work that the ALJ ultimately assessed). (*See* VE Test., R. 129–30.) However, Mr. Carpenter's opined limitations are not fully accommodated by sedentary work, which primarily requires sitting, with walking and standing required "occasionally." 20 C.F.R. § 416.967(a). "Occasionally" is defined by Social Security Ruling 96-9p as "occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-

12

hour workday. Sitting would generally total about 6 hours of an 8-hour workday." *Titles II & XVI: Determining Capability to Do Other Work—Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, 1996 WL 374185, at *3, SSR 96-9p (S.S.A. July 2, 1996). Therefore, although sedentary work would account for Mr. Carpenter's opined limitations that Plaintiff can walk or stand for a maximum of two hours in an eight-hour workday, sedentary work requires significantly more than the maximum two hours of sitting that Plaintiff can sustain according to Mr. Carpenter. Thus, the ALJ's error is not rendered harmless by the availability of sedentary jobs that a person with the ALJ's assessed RFC could perform.

In sum, given the ALJ's failure to articulate her supportability and consistency analyses and the ALJ's mischaracterization of Mr. Carpenter's treatment notes, the undersigned cannot conclude that the ALJ's reasons for discounting Mr. Carpenter's opinions are supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's statement of errors be **SUSTAINED**.

## VI. DISPOSITION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). The undersigned therefore **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting

authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE